**Anthony Castronovo, Administrator of Estate of Isabelle Cuda, Deceased, Plaintiff-Appellant, v. Mary Murawsky, Defendant-Appellee.**

**Gen. No. 10,744.**

Opinion filed July 14, 1954.
Released for publication July 30, 1954.

Philip A. Nicolosi, of Rockford, for appellant; Sam J. Cannariato, of Rockford, of counsel.

Victor, Ghent, Peterson & Cook, of Rockford, for appellee; Alex J. Victor, John S. Ghent, and Collis M. Hennelly, all of Rockford, of counsel.

Mr. Justice Dove delivered the opinion of the court.
On November 19, 1952, the plaintiff, as administrator of the estate of Isabelle Cuda filed his complaint in the circuit court of Winnebago county seeking a recovery against Mary Murawsky for the alleged wrongful death of his intestate, Isabelle Cuda. The trial court sustained the motion of the defendant to dismiss the complaint and from an appropriate final judgment in bar of the action, the plaintiff appeals.

The first count of the complaint, after alleging the appointment of the plaintiff as administrator, averred that on November 3, 1952 plaintiff's intestate went to the home of defendant in Rockford, who was not, at that time, a licensed or practicing physician and the defendant then and there unlawfully and criminally performed an operation in or near the uterus or womb of plaintiff's intestate with an instrument, the kind of which is not known to the plaintiff, for the purpose of procuring an abortion or miscarriage, said operation not being necessary to preserve the life of plaintiff's intestate.

This count then alleged that said operation was a criminal offense contrary to the provisions of section 3 of the Criminal Code [Ill. Rev. Stats. 1953, ch. 38, § 3; Jones Ill. Stats. Ann. 37.015] of this State and that as the direct and proximate result thereof plaintiff's intestate became extremely ill and, on November 12, 1952

169

died. This count then averred that plaintiff's intestate left surviving her, her husband and minor child, her next of kin, and charged that by reason of her death her next of kin were deprived of their means of support, service and money which they were accustomed to receive from decedent.

Count two of the complaint in addition to the allegations contained in count one averred that said operation was so negligently and carelessly performed that septicemia resulted causing the death of plaintiff's intestate.

Counsel for appellant call our attention to the provisions of the Criminal Code to the effect that one who procures or causes an abortion or miscarriage and the mother dies is guilty of murder (Ill. Rev. Stats. 1953, ch. 38, § 3 [Jones Ill. Stats. Ann. 37.015]). And also to the Wrongful Death Act which provides that whenever the death of a person shall be caused by the wrongful act, neglect or default and the act, neglect or default is such as would, if death had not ensued have entitled the party injured to maintain an action and recover damages in respect thereof, then the person who would have been liable if death had not ensued shall be liable in an action for damages notwithstanding the death of the person injured and altho the death shall have been caused under such circumstances as amount in law, to a felony (Ill. Rev. Stats. 1953, ch. 70, § 1 [Jones Ill. Stats. Ann. 38.01]).

Counsel for appellee insist that the pleadings disclose that this is an action for wrongful death and that due care upon the part of decedent and her next of kin must be alleged and proven; that plaintiff's intestate went to the home of appellee and there voluntarily submitted to the performance upon her of an illegal act and she thereby became a party to the crime of abortion; that courts will not lend aid to one who founds his cause of action upon an immoral or illegal

170

act, and the instant complaint discloses that decedent was not in the exercise of any care for her own safety, but that she invited the assault to be made upon her, consented thereto, and it therefore follows that defendant is absolved from any civil liability.

Counsel for appellant insist that the fact that plaintiff's intestate voluntarily went to the home of the defendant for the purpose of having an abortion performed and voluntarily submitted to such an operation does not bar a recovery because one cannot consent to an illegal act. Counsel argue that when decedent went to the home of appellee to procure an abortion, it is reasonable to assume that she intended that the abortion would not be performed negligently; that the motion to dismiss admits the charge of negligence, and it therefore follows that a cause of action exists in favor of appellant.

Counsel for the parties agree that the question presented for determination upon this appeal has not been passed upon by the Supreme Court or any Appellate Court in Illinois, and counsel state that the decisions in other jurisdictions are conflicting.

*Milliken v. Heddesheimer,* 110 Ohio St. 381, 144 N. E. 264, 33 A. L. R. 54, was an action brought by the administrator of the estate of Iva J. Triplett on behalf of her surviving husband and children to recover damages for her wrongful death which followed an abortion operation performed by the defendant upon the decedent. The second cause of action adopted all the allegations of the first cause of action and charged in addition that the operation was not only unlawfully and criminally performed but was so negligently and carelessly performed that septicemia resulted therefrom causing the death of plaintiff's intestate. The trial court sustained a motion by defendant for judgment on the pleadings. The court of appeals reversed that judgment, and the Supreme Court of Ohio affirmed

171

the judgment of the court of appeals. The Supreme Court, in its opinion, stated that it assumed that the criminal operation was performed with the consent of Iva Triplett, the deceased, and that she, therefore, participated in the doing of the wrongful act which caused the injury resulting in her death. The court then stated that the general rule is that whosoever by his pleadings avows that he has been engaged with others in an unlawful act, or has consorted with them in an unlawful enterprise, in which he has been unfairly treated or suffered an injustice which they should redress, will be met by the refusal of the court to look any further than his complaint. The court then said: "The reasons assigned for the rule being the discouragement of illegal transactions by apprising every person who engages therein of the risk he assumes, and giving him to understand that whoever takes part in an illegal transaction does so under a responsibility measured by the whole extent of the injury or loss and cannot hope to secure contribution from those engaged with him in the wrongful enterprise. And the further reason is assigned that the State should not supply courts and officers and incur expense to indemnify any one from loss he has encountered through a violation or disregard of the law." The court quoted from 1 Cooley on Torts (3rd ed.) p. 282 and stated that as a general rule, where it appears that the ground of complaint of the plaintiff has been induced by that to which he has assented, he cannot recover, but said it was otherwise when the public peace or the life or person of a citizen is involved, and held "that an act which is designed to take the life of one, and necessarily endanger the life of another, and is violative not only of good morals but of the criminal laws of the state, is not one from the consequences of which he who commits the act may be relieved by reason of the previous consent of the person injured."

*Martin v. Hardesty,* 91 Ind. App. 239, 163 N. E. 610, was an action by the administrator of the estate of Arretta Hardesty against a physician who performed an operation upon Mrs. Hardesty for the purpose of procuring an abortion. As a result of the operation, Mrs. Hardesty died. The court stated that the important question presented by the appeal was whether the consent of decedent to the performance of an unlawful operation to produce an abortion, which results in her death, barred her legal representative from the prosecution of an action for damages against the one who performed the operation. The court cited cases from other jurisdictions and quoted with approval *Milliken v. Heddesheimer,* 110 Ohio St. 381, *supra,* and held that the consent of Mrs. Hardesty to the performance of the illegal operation was no defense to the action by her legal representative against the physician who performed the operation and affirmed a judgment of $5,000 in favor of the plaintiff. The court recognized that there were decisions to the contrary and cited *Goldnamer v. O'Brien,* 98 Ky. 569, 33 S. W. 831, 36 L. R. A. 715, 56 Am. St. Rep. 378; *Szadiwicz v. Cantor,* 257 Mass. 518, 154 N. E. 251, 49 A. L. R. 958; *Hunter v. Wheate,* 53 App. D. C. 206, 289 Fed. 604, 31 A. L. R. 980; but went on to say that the weight of judicial authority as to the general principle of liability was in accord with *Adams v. Waggoner,* 33 Ind. 531, 5 Am. Rep. 230, an earlier Indiana Supreme Court case.

*Miller v. Bennett,* 190 Va. 162, 56 S.E.2d 217, 21 A.L.R.2d 364, was an action by the personal representative of Kerenda C. Bennett to recover damages for the wrongful death of decedent whose death was the result of an abortion or attempted abortion performed by defendant upon Mrs. Bennett. A judgment was recovered by the plaintiff in the lower court, and, in reversing that judgment, the court stated that the

173

decisive question presented by the record was whether consent of a mature married woman to an attempt to produce an illegal abortion, resulting in death, bars recovery, under Lord Campbell's Act, in an action by her administrator against the party attempting to procure the abortion and said: "The general rule, that a party who consents to and participates in an immoral or illegal act cannot recover damages from other participants for the consequence of that act, is well settled. The rule itself, and the reasons therefor, are clearly stated in the often quoted excerpt from the opinion of Lord Mansfield, in *Holman v. Johnson*, 98 Eng. Rep. 1120, which is as follows:

" 'No Court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appears to arise ex turpi causa, or the transgression of a positive law of this country, there the Court says he has no right to be assisted. It is upon that ground the Court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So if the plaintiff and defendant were to change sides, and the defendant was to bring his action against the plaintiff, the latter would then have the advantage of it; for where both are equally in fault, potior est conditio defendentis.'

"This general rule has been applied in Virginia in at least four cases, and in most, if not all, of the American courts. American-LaFrance v. Arlington County, 164 Va. 1, 178 S. E. 783; Roller v. Murray, 112 Va. 780, 72 S. E. 665, 38 L. R. A., N. S., 1202, Ann. Cas. 1913B, 1088; Levy v. Davis, 115 Va. 814, 80 S. E. 791; Bristol v. Dominion Nat. Bank, 153 Va. 71, 149 S. E. 632; Higgins v. McCrea, 116 U. S. 671, 6 S. Ct. 557, 564, 29 L. Ed. 764; McMullen v. Hoffman, 174 U. S. 639, 19 S. Ct. 839, 43 L. Ed. 1117; Continental Wall Paper Co. v. Louis Voight and Sons, Co., 212 U. S. 227, 29 S. Ct. 280, 53

174

L. Ed. 486; The Florida, 101 U. S. 37, 25 L. Ed. 898; Riggs v. Palmer, 115 N. Y. 506, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819; Levy v. Kansas City, 10 Cir., 168 F. 524, 93 C. C. A. 523, 22 L. R. A., N. S., 862; Thomas v. Richmond, 12 Wall 349, 79 U. S. 349, 20 L. Ed. 453.

"The principle applies to civil actions, whether based on tort or contract. When applied to actions in tort, it is said that consent or participation in an immoral or unlawful act by plaintiff precludes recovery for injuries sustained as a result of that act, on the maxim volenti non fit injuria. It is conceded that Mrs. Bennett consented to and participated in the immoral and illegal act when she solicited the services of Mrs. Coffman and submitted herself to treatment to produce abortion. If the general rule is applicable, then this action is barred."

The court then, in *Miller v. Bennett,* proceeds to answer the contention of counsel for appellee that there is an exception to this general rule and cites and quotes from an article entitled "Consent as Affecting Civil Liability for Breaches of the Peace," 24 Columbia Law Review 819, cites the case of *Milliken v. Heddesheimer,* 110 Ohio St. 381, *supra, Martin v. Hardesty,* 91 Ind. App. 239, *supra, Miller v. Bayer,* 94 Wis. 123, *Lembo v. Donnell,* 117 Me. 143, where the exception to the general rule has been extended to permit a recovery where the woman has consented to an illegal operation resulting in personal injuries to her, but concludes that the better reasoned cases support the view that no recovery can be had in such cases and cited and commented upon some of the following cases: *Levy v. Kansas City,* 168 Fed. 524, 93 C. C. A. 523, 22 L. R. A., N. S. 862; *Goldnamer v. O'Brien,* 98 Ky. 569, 33 S. W. 831, 36 L. R. A. 715, 56 Am. St. Rep. 378; *Szadiwicz v. Cantor,* 257 Mass. 518, 154 N. E. 251, 49 A. L. R. 958; *Martin v. Morris,* 163 Tenn. 186, 42 S.W.2d 207; *Hunter v.*

175

*Wheate,* 53 App. D. C. 206, 289 Fed. 604, 31 A. L. R. 980; *Smartt v. State,* 112 Tenn. 539, 80 S. W. 586; *McNeill v. Mullin,* 70 Kan. 634, 79 Pac. 168; *Androws v. Coulter,* 163 Wash. 429, 1 P.2d 320; *Bowlan v. Lunsford,* 176 Okla. 115, 54 P.2d 666; *Nash v. Meyer,* 54 Idaho 283, 31 P.2d 273.

Following the report of *Miller v. Bennett, supra,* in 21 A.L.R.2d 364, is an annotation upon the right of action for injury to or death of a woman who consented to abortion. This annotation supersedes the annotations on the same subject in 31 A. L. R. 983, 33 A. L. R. 58, and 49 A. L. R. 960. The cases which deny recovery and the cases permitting recovery are collected and referred to. The majority of jurisdictions deny a recovery, and, in our opinion, they are more in harmony with analogous decisions in our own jurisdiction. For instance, *Gilmore v. Fuller,* 198 Ill. 130, was an action by a participator in a charivari party who was injured by the carelessness of another member of the party in handling a revolver, and it was held the plaintiff could not recover damages therefor since both parties were participants in an unlawful act. In the course of its opinion, the court said that both the plaintiff and defendant were engaged, at the time the plaintiff was injured by the discharge of the revolver which was in the hands of the defendant, in wilfully disturbing the peace and quiet of the family of one Daniel Hirsch, at whose residence a wedding had taken place earlier in the evening; that the enterprise in which they were both engaged was an unlawful one; that the assemblage of persons, of which they were members, was an unlawful and illegal assemblage and a gathering of illegal trespassers, and that both the plaintiff and defendant were engaged in the same unlawful enterprise. The court cited and quoted from Beach on Contributory Negligence, Cooley on Torts, various cases from this and other jurisdictions and mentioned

176

that as long ago as the case of *Holman v. Johnson,* Cowp. 343, Lord Mansfield said: "The principle of public policy is this: *ex dolo malo, non oritur actio.* No court will lend its aid to a man, who founds his cause of action upon an immoral or illegal act." See also *Newton v. Illinois Oil Co.,* 316 Ill. 415; *Kessinger v. Standard Oil Co.,* 245 Ill. App. 376, and *Fristoe v. Boedeker,* 194 Ill. App. 52.

The author of the article entitled "Consent and Civil Liability for Illegal Abortions, appearing in Vol. 45 Illinois Law Review, No. 3, p. 395, after citing and commenting upon substantially all of the cases referred to in this opinion, concludes his article with this paragraph: "The entire problem represents a conflict between the doctrine that every person should be entitled to a remedy to compensate for injuries suffered and the theory that the courts should not lend their aid to a wrongdoer. In order to resolve this conflict, public policy considerations should be a factor to determine which doctrine should prevail. In the absence of a substantial showing that allowing civil recovery will result in fewer illegal abortions, the courts should continue to treat consent as a bar to recovery for any injury, wilful or negligent, resulting from nontherapeutic abortions."

In our opinion, neither count of the complaint stated a cause of action under the Wrongful Death Act of this State, and the trial court did not err in sustaining the motion of defendant dismissing the complaint and rendering the judgment it did. The judgment of the circuit court of Winnebago county will be affirmed.

*Judgment affirmed.*

Wolfe, J., concurs.

Mr. Justice Anderson took no part in the consideration or decision of this case.