HARRIS TRUST AND SAVINGS BANK, Guardian of the Estate of Michael Clark, *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. OTIS ELEVATOR COMPANY, Defendant-Appellee and Cross-Appellant.

First District (5th Division)  No. 1—96—3361

Opinion filed May 22, 1998.—Rehearing denied July 16, 1998.

William J. Harte, Ltd. (William Harte, of counsel), and Herbert F. Stride, Ltd. (Herbert Stride and Joan Mannix, of counsel), both of Chicago, for appellants.

Menges, Mikus & Molzahn, of Chicago (Perry Rocco, Charles Menges, and Scott Reno, of counsel), for appellee.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiffs, Harris Trust & Savings Bank, as guardian of the

estate of Michael Clark, a disabled person, and Mary Clark and Debbie Dunn, as co-guardians of the person of Michael Clark, appeal from a directed verdict entered in favor of the defendant, Otis Elevator Company (Otis). The plaintiffs maintained this negligence action on behalf of Clark to recover damages for injuries he sustained in an elevator serviced by Otis. The plaintiffs also appeal from the trial court's denial of their petition for sanctions against Otis and its attorneys for violation of Supreme Court Rule 137 (134 Ill. 2d R. 137). Otis has cross-appealed from the trial court's denial of its petition for sanctions against the plaintiffs and their attorneys for violation of Supreme Court Rules 137 and 219 (134 Ill. 2d Rs. 137, 219).

An understanding of the issues presented by this appeal requires that we first recount the procedural history of the case. This action was commenced by Michael Clark on February 19, 1987, with the filing of his complaint against Otis, D.S. Associates, and others, seeking recovery for injuries he sustained on December 4, 1986. On January 7, 1993, Clark was declared a disabled person, and Mary Clark and Debbie Dunn were appointed co-guardians of his estate and person. Thereafter, the co-guardians were substituted as the plaintiffs in this action and filed an amended complaint on Clark's behalf. As a consequence of Clark having been adjudicated a disabled person, the co-guardians filed a motion asserting the applicability of the Dead-Man's Act (735 ILCS 5/8—201 (West 1992)). When that motion was heard, the parties argued the issue of whether Clark was competent to testify at trial. Relying solely upon transcripts of the testimony given at Clark's adjudication hearing and the affidavits and reports filed in that proceeding, the court ruled that Clark was incompetent to testify. Thereafter, the case was tried before a jury resulting in a verdict in Clark's favor. The jury awarded Clark $978,600 in damages after deducting 16% for his contributory fault. In response to Otis's post-trial motion, the trial judge: granted a remittitur of $16,278, reducing the verdict to $962,322; applied a $500,000 setoff resulting from Clark's settlement with D.S. Associates; and entered a net judgment in favor of Clark and against Otis in the sum of $462,322. Otis appealed. "Because the trial judge failed to independently consider whether the plaintiff [Clark] was competent to testify," we reversed the judgment entered against Otis and remanded the case "for a new trial." *Clark v. Otis Elevator Co.*, 274 Ill. App. 3d 253, 258, 653 N.E.2d 771 (1995) (hereinafter *Clark I*). The co-guardians filed a petition for rehearing, asserting, among other things, that this court should have addressed the other points raised by Otis on appeal because, if the verdict could be otherwise sustained and if, upon remand, Clark was again found to be incompetent to testify, there would be no need for a

new trial. We denied the petition for rehearing on August 15, 1995. Thereafter, the co-guardians filed a petition for leave to appeal to the supreme court, which was denied on December 6, 1995 (164 Ill. 2d 559, 660 N.E.2d 1266 (1995)).

On remand, the plaintiffs filed a sixth amended complaint on Clark's behalf against Otis and contemporaneously moved the court to declare Clark incompetent to testify at trial. The court conducted a hearing to determine Clark's competency and determined that he was incompetent to testify. The plaintiffs thereupon moved the court to reinstate the prior jury verdict. The trial judge denied the motion, and the retrial of the cause commenced before a jury. At the close of the plaintiffs' case, the trial judge directed a verdict in favor of Otis. Following the entry of the directed verdict, Otis moved for sanctions against the plaintiffs and their attorneys for violation of Supreme Court Rules 137 and 219, and the plaintiffs moved for sanctions against Otis and its attorneys alleging violations of Supreme Court Rule 137. The court denied both motions, and this appeal followed.

We will first address the plaintiffs' argument that the trial court erred in denying their motion to reinstate the original judgment entered in favor of Clark when, on remand, Clark was again found incompetent to testify.

■ ■ When a judgment of the circuit court is reversed and the cause is remanded by this court with specific directions as to the action to be taken, it is the duty of the trial court to follow those directions. *People v. National Builders Bank*, 12 Ill. 2d 473, 476-77, 147 N.E.2d 42 (1957). Generally, the correctness of a trial court's action on remand is to be determined from our mandate, as opposed to our opinion. *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 308, 427 N.E.2d 563 (1981). This proposition, however, is based upon the assumption that the direction contained in our mandate is precise and unambiguous. *Muhlke v. Muhlke*, 285 Ill. 325, 330, 120 N.E. 770 (1918). The mandate which issued after our opinion in *Clark I* merely states that the cause was "Reversed and Remanded." Such language is imprecise and ambiguous in its direction to the trial court, a failing for which we must ultimately accept responsibility. The trial court, faced with the general wording of our mandate, had no choice but to examine our opinion in *Clark I* to determine the purpose of the remand order. A reading of that opinion reveals that our judgement was clear and unambiguous; we reversed the previous judgment in favor of Clark and remanded the matter "for a new trial." *Clark I*, 274 Ill. App. 3d at 258. Based upon the direction contained in our opinion in *Clark I*, the trial court had little choice but to deny the plaintiffs' motion to reinstate the original judgment in this case. To the extent that

the plaintiffs' arguments on this issue could be construed as a request that we review and reconsider that portion of our opinion in *Clark I* which ordered a new trial, we decline the invitation.

■ A party seeking review of a decision of this court has two avenues for relief. The party may file a petition with this court seeking a rehearing and may petition for leave to appeal to the supreme court. *Foster v. Kanuri*, 288 Ill. App. 3d 796, 799, 681 N.E.2d 111 (1997). When, as in this case, a party exercises both such options and both petitions are denied, our decision becomes the law of the case and binds the parties and the trial court in any subsequent proceeding on remand. *PSL Realty*, 86 Ill. 2d at 312; *Hamilton v. Williams*, 237 Ill. App. 3d 765, 774, 604 N.E.2d 470 (1992). The doctrine of the law of the case also provides that a reviewing court, once having decided an issue, will generally refuse to revisit the matter in any subsequent appeal in the same case. This rule of practice is not a limitation on our power to revisit an issue in circumstances where facts have changed or where we determine that our initial decision was clearly erroneous and would work a manifest injustice. *People v. Patterson*, 154 Ill. 2d 414, 468-69, 610 N.E.2d 16 (1992); *Anest v. Bailey*, 265 Ill. App. 3d 58, 65, 637 N.E.2d 1209 (1994).

In this case, the plaintiffs argue that no useful purpose was served by conducting a retrial when, on remand, Clark was again adjudged incompetent to testify and the plaintiffs stood ready to establish that he was also incompetent at the time of the first trial. Yet, the plaintiffs fail to point out why our prior decision ordering a new trial was clearly erroneous under the circumstances of this case.

In *Clark I*, we fashioned an appropriate remedy for the trial court's failure to conduct a proper competency hearing prior to ruling that Clark was incompetent to testify at a trial which took place in March 1993. See *People v. Cox*, 87 Ill. App. 2d 243, 230 N.E.2d 900 (1967). On remand, the plaintiffs filed a motion seeking an order declaring Clark "incompetent for purposes of his testimony in the case herein." The motion was heard on May 2, 1996. The plaintiffs presented Clark as their sole witness, and he was examined by counsel for the plaintiffs, counsel for Otis, and the court. The plaintiffs' counsel also tendered reports from a Dr. Markos and a Dr. Lahmeyer and asked the court to "consider those reports in conjunction with the examination of the witness in respect to the question of the witness' competence." Counsel for Otis objected to the court's consideration of Dr. Lahmeyer's report, claiming both that the report was hearsay and that Dr. Lahmeyer's opinions had not been previously disclosed in violation of Supreme Court Rule 213 (166 Ill. 2d R. 213). The trial court found that Dr. Lahmeyer's report was not necessary to a determination of

Clark's competency. Relying upon the reports of Dr. Marcos and the guardian *ad litem* submitted in Clark's 1993 adjudication proceeding, as well as the court's own observation of Clark and his responses to the questions posed during his examination, the court found Clark incompetent to testify. After the court made its ruling, counsel for the plaintiffs made an oral motion seeking a reinstatement of the original verdict against Otis and informed the court that, if permitted, he could produce Drs. Markos and Lahmeyer to testify that Clark was also incompetent to testify at the original trial in March 1993.

■ The competency of a witness is fixed as of the date of the witness' testimony. *Knab v. Alden's Irving Park, Inc.*, 49 Ill. App. 2d 371, 199 N.E.2d 815 (1964). The question of whether a witness is competent to testify is a matter to be determined by the court through preliminary inquiry or by observing the witness' demeanor during trial. *People v. Williams*, 147 Ill. 2d 173, 212, 588 N.E.2d 983 (1991). A court may consider the opinions of psychiatric experts in determining the competency of a witness; but if, after conducting a preliminary inquiry or observing the demeanor of the witness while testifying, the court is of the opinion that the witness is competent, then the court is not bound by expert opinions to the contrary. See *People v. Spencer*, 119 Ill. App. 3d 971, 457 N.E.2d 473 (1983).

■ When we decided *Clark I*, there was nothing in the record to reflect that Clark was so brain damaged that he was incapable of communicating or responding to inquiry. We issued our opinion in *Clark I* and remanded the case for a new trial in April 1995, some two years after the original trial. We know from the record before us in this appeal that Clark was able to communicate and respond to questions at his May 1996 competency hearing on remand. Other than by relying solely upon the opinions of experts, we are at a loss to determine how the trial judge on remand could ever determine whether Clark was or was not competent to testify some three years earlier, as no preliminary inquiry was ever conducted prior to his being declared incompetent to testify at the original trial in March 1993. No doubt we could have ordered a retrospective competency hearing in *Clark I* (see *People v. Makiel*, 263 Ill. App. 3d 54, 635 N.E.2d 941 (1994)), but there are "inherent difficulties" in attempting retrospective determinations of mental competency even "under the most favorable circumstances" (*Drope v. Missouri*, 420 U.S. 162, 183, 43 L. Ed. 2d 103, 119-20, 95 S. Ct. 896, 909 (1975)), particularly when the delay in conducting the hearing would exceed one year (see *People v. Neal*, 179 Ill. 2d 541, 553, 689 N.E.2d 1040 (1997)). Under the circumstances of this case, we find nothing clearly erroneous in our having ordered a new trial in *Clark I* (see *Cox*, 87 Ill. App. 2d 243, 230 N.E.2d 900), and we will, therefore,

not revisit the issue. For these reasons, we find no error in the trial court's refusal to reinstate the verdict rendered in favor of Clark at the original trial.

We next address the plaintiffs' argument that the trial court erred in directing a verdict in favor of Otis.

The plaintiffs' claim against Otis was grounded in allegations of negligence and also invoked the doctrine of *res ipsa loquitur.* The plaintiffs' attorney, however, represented to the court during the trial of the cause that the case against Otis was predicated upon the assertion that a safety device on the elevator known as a gate switch had been removed by an Otis employee prior to Clark's accident.

In their case in chief, the plaintiffs presented evidence that Clark was injured on December 4, 1986, when his left leg was crushed while he was riding in an elevator located in the building at 808 W. 76th Street in Chicago (the building). Maurice Alexander testified that he and Lee Dunn were visiting a friend who resided on the fourth floor of the building when they were summoned to the elevator. When he got to the elevator, Alexander saw that the outer door of the elevator was open and the interior scissors gate was partially open. He observed Clark sitting on the floor of the elevator with his leg caught in the space between the floor of the elevator car and the building's fourth-floor landing. The floor of the elevator car was not level with the landing. Dunn pushed the elevator button and the elevator went down. As the elevator descended, Alexander was holding the outer door open and he could see that the interior scissors gate was partially open. According to Alexander, the elevator came back up to the fourth floor on its own, and when it did, Clark's leg was back in the elevator car. Dunn placed a tourniquet on Clark's leg, pushed the elevator button, and took Clark to paramedics waiting on the first floor.

Elmer Atkinson, a Chicago police officer, testified that he responded to an assignment to assist the fire department at the building on the night Clark was injured. When he arrived, Atkinson observed firefighters and paramedics attempting to free Clark's leg, which was pinned between the wall of the elevator shaft and the floor of the elevator car at the lobby level. Atkinson stated that the floor of the elevator car was approximately four inches below the lobby level. According to Atkinson, Clark told him that the floor of the elevator car was below the lobby level when he entered the elevator. Clark also told Atkinson that he fell as he was attempting to enter the elevator and it began moving. Atkinson testified that, when he examined the elevator on the evening of Clark's injury, he observed that the elevator's gate switch was missing, but when he returned to the building on December 6, 1986, two days after Clark's injury, he noticed that the gate switch had been replaced.

Jesse Chainey, an elevator mechanic employed by Otis for approximately 26 years, testified that Otis had a full maintenance contract covering the building's elevator. According to Chainey, the elevator was checked twice a month and it was his obligation to maintain the elevator in full working order. Chainey had keys for the building. Chainey testified that when he was at the building for a routine inspection of the elevator on December 2, 1986, he checked the elevator doors and they were operating properly. Chainey returned to the building on December 5, 1986, the morning after Clark's injury. Chainey stated that he checked the elevator, but "didn't find any signs of anything." Chainey was also questioned about the operation of the elevator. He testified that the subject elevator has two doors, an outer door and an interior scissors gate. According to Chainey, if either is open, the elevator will not move. When the scissors gate is closed, the gate switch permits power to go to the motor and the elevator can then move. If the gate switch is removed, the elevator will not operate unless the wires running to the switch are tied together. According to Chainey, if the gate switch were removed and the wires tied together, the elevator could move once the outer door was closed, even with the scissors gate open, if the occupant of the elevator pushed one of the floor buttons or if someone pushed one of the elevator call buttons located in the hallway on another floor.

John Donnelly, the plaintiffs' elevator expert, also testified that the subject elevator should not move unless both the outer door and the scissors gate are closed. According to Donnelly, the gate switch prevents the elevator from operating while the scissors gate is open. However, if the wires leading to the gate switch were tied together or if the gate switch were bypassed at the controller, the elevator could operate with the scissors gate open once the outer door was closed. Donnelly stated that it would be relatively simple for a person knowledgeable in elevator mechanics to tie the gate switch wires together or bypass the switch at the controller, but a lay person would not be able to perform either procedure. In response to a question posed by the plaintiffs' attorney, Donnelly opined, based upon the assumption that the gate switch was missing on the night of Clark's injury, that Otis was negligent. Counsel for Otis immediately objected, claiming that Donnelly's opinion in this regard was contrary to the opinion that he had rendered at his deposition and should be stricken as a violation of the discovery rules. The trial judge entertained argument on the objection outside the presence of the jury. In addition to sustaining Otis's objection, the trial judge ruled that Otis could cross-examine Donnelly on his deposition testimony to the effect that he did not believe that an Otis employee removed the gate switch. The plaintiffs' attorney

objected to Donnelly being permitted to so testify, arguing, *inter alia*, that such an opinion was speculative. The trial judge overruled the plaintiffs' objection, and when the jury returned, she struck Donnelly's prior opinion testimony and instructed the jury to disregard it. On cross-examination, Otis's attorney elicited from Donnelly, over the plaintiffs' objection, his opinion that some representative of the building management had both removed the gate switch prior to Clark's injury and later replaced the switch.

At the close of the plaintiffs' case, Otis moved for a directed verdict. The trial court granted the motion finding that "[a]ny and all causation testimony which is relevant points toward a third person, not Otis, as being the cause" of Clark's injury. The court also found that Otis lacked the exclusive control of the elevator necessary for applying the doctrine of *res ipsa loquitur*.

■ The standard to be employed in directing verdicts is well settled. "[V]erdicts ought to be directed *** only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967). It is by this standard that a trial court must rule on such a motion, and it is also by this standard that we must judge the propriety of the trial court's action in that regard. Guided by the admonition of the *Pedrick* court, we have examined the evidence introduced upon the trial of this cause.

■ In order to recover in a negligence action, a plaintiff must prove that the defendant owed a legally recognized duty, that the defendant breached that duty, and that the plaintiff was injured as a proximate result of the breach. *Wojtowicz v. Cervantes*, 284 Ill. App. 3d 524, 531, 672 N.E.2d 357 (1996). Negligence may be established by either direct or circumstantial evidence. *Mort v. Walter*, 98 Ill. 2d 391, 396, 457 N.E.2d 18 (1983). Circumstantial evidence is "the proof of certain facts and circumstances from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind." *Consolino v. Thompson*, 127 Ill. App. 3d 31, 33, 468 N.E.2d 422 (1984). The proven circumstantial facts must be of such a nature and so related as to make the facts to be inferred the more probable. *Pyne v. Witmer*, 129 Ill. 2d 351, 369, 543 N.E.2d 1304 (1989). Circumstantial evidence need not exclude all other possible inferences which might be drawn from the proven facts, and its use is not restricted to instances where the circumstances support only one logical conclusion. *Pyne*, 129 Ill. 2d at 369; *Mort*, 98 Ill. 2d at 396. Circumstantial evidence is sufficient "whenever an infer-

ence may reasonably be drawn therefrom" (*Mort*, 98 Ill. 2d at 396), that is to say, when the fact to be inferred exists within the realm of probability, and not mere possibility. *Wojtowicz*, 284 Ill. App. 3d at 532.

■ The doctrine of *res ipsa loquitur* is a species of circumstantial evidence which permits the trier of fact to infer negligence on the part of a defendant if the plaintiff demonstrates that the injury complained of was the result of an occurrence that ordinarily does not happen in the absence of negligence and by an instrumentality within the defendant's exclusive control. Whether the doctrine applies in any given case is a question of law to be decided by the court. *Gatlin v. Ruder*, 137 Ill. 2d 284, 294-95, 560 N.E.2d 586 (1990).

■ Based upon the facts contained in the record before us, we find no error in the trial court's determination that the plaintiffs could not avail themselves of the doctrine of *res ipsa loquitur* to establish Otis's liability for the injuries suffered by Clark. The elevator in which Clark was riding at the time of his injury, and in particular its gate switch, was located in a building accessible to anyone who gained entrance to the building and was not under the exclusive control of Otis. However, we are still faced with the question of whether the trial court erred by directing a verdict in favor of Otis on the plaintiffs' claim of specific negligence.

Accepting as true for the purposes of our review Atkinson's testimony that the gate switch on the elevator was missing on the night of Clark's injury, we are faced with the issue of whether any evidence introduced by the plaintiffs could support an inference that the switch was removed by an Otis employee. The trial court seemed to accept Donnelly's testimony that a representative of the building removed the switch as determinative of the question. We believe, however, that Donnelly's opinion in this regard was pure speculation and should never have been admitted.

■ "An expert's opinion is only as valid as the bases and reasons for the opinion." *Gyllin v. College Craft Enterprises, Ltd.*, 260 Ill. App. 3d 707, 715, 633 N.E.2d 111 (1994). When the opinion of an expert is totally lacking in factual support it is nothing more than conjecture and guess and should not be admitted as evidence. See *Dyback v. Weber*, 114 Ill. 2d 232, 244, 500 N.E.2d 8 (1986); *Wilson v. Bell Fuels, Inc.*, 214 Ill. App. 3d 868, 875-76, 574 N.E.2d 200 (1991). Donnelly testified that in order to bypass a gate switch one would have to be knowledgeable in elevator mechanics. There is simply nothing in the testimony presented in this case or in the discovery materials reviewed by the trial court that would support the conclusion that any agent or employee of the building owners possessed such knowledge and ability. To the contrary, the only evidence of a person with such knowledge of

elevator mechanics who had access to the subject elevator was the plaintiffs' evidence that Chainey, Otis's employee, was present at the building two days before Clark's injury and again one day after. While we agree with Otis that Donnelly was qualified as an expert in elevator mechanics, that fact does not authorize the admission of his unsupported speculation as to who removed the gate switch. The trial court should never have admitted his opinion on this issue and should not have relied on that opinion in directing a verdict in favor of Otis. See *Coffey v. Brodsky*, 165 Ill. App. 3d 14, 24-25, 518 N.E.2d 638 (1987).

It is clear from the trial judge's comments that she relied exclusively upon Donnelly's speculative opinion as to who removed the gate switch in directing a verdict for Otis, and thereby ignored the inferences that could be drawn from the circumstantial evidence introduced by the plaintiffs. Atkinson testified that the gate switch was missing when he examined the elevator on the night Clark was injured but had been replaced by the time he returned to the building two days later. Donnelly opined that only a person knowledgeable in elevator mechanics could have removed the gate switch and tied the wires together, enabling the elevator to operate with the scissors gate open. The only evidence of a person possessing such an ability who had access to the subject elevator near the time of Clark's injury was the testimony that Chainey, an experienced elevator mechanic, was in and around the elevator two days before Clark's injury and again on the morning after Clark's injury. We believe that this circumstantial evidence, if believed by a jury, is minimally sufficient to support the inference that Chainey removed the gate switch and later replaced it. Consequently, we conclude that the trial court erred in directing a verdict in favor of Otis on the plaintiffs' claim of specific negligence. See *Murphy v. Messerschmidt*, 68 Ill. 2d 79, 368 N.E.2d 1299 (1977).

■ Lastly, the parties have appealed the trial court's summary denial of their respective sanction motions. The imposition of sanctions under either Rule 137 or 219 is a matter committed to the sound discretion of the trial court, and its decision on such a matter will not be disturbed on appeal absent an abuse of that discretion. *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.*, 250 Ill. App. 3d 149, 621 N.E.2d 77 (1993); *Johnson v. Owens-Corning Fiberglas Corp.*, 233 Ill. App. 3d 425, 599 N.E.2d 129 (1992). We find no such abuse of discretion in this case.

■ After the trial court directed a verdict in Otis's favor, Otis filed a motion seeking sanctions against the plaintiffs and their attorneys pursuant to Supreme Court Rules 137 and 219. In its motion, Otis charged that the plaintiffs and their attorneys violated Rule 137 by filing their fifth and sixth amended complaints with full knowledge

that their own expert witness, Donnelly, had no criticism of Otis's maintenance of the subject elevator unless an Otis employee was responsible for the removal of the gate switch, and was also of the belief that an agent of the building owners actually removed the switch. According to Otis, the plaintiffs' attorney knew at the time of the filing of the fifth and sixth amended complaints that there was no evidence that any Otis employee removed the gate switch. There is little doubt that the plaintiffs were aware that their expert was of the belief that someone other than an Otis employee removed the gate switch, but the plaintiffs also knew that there was no direct evidence uncovered prior to trial that anyone employed by the building owners either removed the gate switch or possessed sufficient knowledge of elevator mechanics to have done so. The evidence did disclose, however, that Chainey, Otis's employee, not only possessed sufficient knowledge of elevator mechanics to remove a gate switch, but had access to the subject elevator two days prior to Clark's injury and again one day after. We believe that under these circumstances, the plaintiffs could reasonably charge Otis with negligence and place the question of whether Chainey removed and later replaced the gate switch before the trier of fact. To be sure, the plaintiffs' evidence on the question is wholly circumstantial, but it is not so weak as to render the filing of their fifth and sixth amended complaints or their pursuit of this action sanctionable under Rule 137.

Otis also sought sanctions under Rule 219 by reason of the plaintiffs' attempt to elicit an opinion from Donnelly that Otis was negligent when he rendered no such opinion in discovery. This attempt, according to Otis, was in violation of Rule 213 (166 Ill. 2d R. 213), which requires that a party seasonably supplement or amend discovery responses whenever new or additional information becomes known to the party. The record reflects Donnelly testified at his discovery deposition that he had no criticism of the manner in which Otis maintained the subject elevator unless one of its employees actually removed the gate switch, in which case he opined Otis would have been negligent. Donnelly also testified at his deposition that he believed that an agent of the building owners removed the gate switch. At trial, the plaintiffs elicited an unqualified opinion from Donnelly that Otis was negligent if the gate switch had actually been removed. The trial court, in its discretion, determined that Donnelly's trial testimony was sufficiently different from his deposition testimony to warrant the striking of the opinion he rendered at trial. Barring a witness from testifying concerning an issue is one of the sanctions available to a trial judge for a discovery rule infraction under Rule 219(c)(iv). 134 Ill. 2d R. 219(c)(iv). Having received relief during the

course of the trial, we are at a loss to determine why Otis would be entitled to any additional relief for the same infraction.

For their part, the plaintiffs sought sanctions against Otis and its attorneys claiming that they violated Rule 137 by filing a frivolous motion for sanctions. Rule 137 cannot be used as a vehicle to punish an unsuccessful litigant. In order to escape sanctions under this rule, a party need only present an objectively reasonable argument in support of their position; they need not necessarily prevail. *Shea, Rogal & Associates*, 250 Ill. App. 3d at 154. Although we have found no abuse of discretion in the trial court's denial of Otis's sanction motion, we cannot say that the arguments upon which that motion was premised were so objectively unreasonable as to render the motion sanctionable.

Based upon the foregoing analysis, we (1) affirm the trial court's denial of the plaintiffs' motion to reinstate the judgment entered in the original trial, (2) affirm the directed verdict entered in favor of Otis on the plaintiffs' *res ipsa loquitur* claim, (3) affirm the denial of the parties' respective sanction motions, (4) reverse the directed verdict entered in favor of Otis on the plaintiffs' claim of specific negligence, and (5) remand this cause to the circuit court for a new trial.

Affirmed in part, reversed in part, and remanded for a new trial.

THEIS and HOURIHANE, JJ., concur.