2018 IL App (2d) 170313
No. 2-17-0313
Opinion filed May 14, 2018
Modified upon denial of rehearing June 14, 2018

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| DOROTHY COLEMAN, Administrator of the Estate of Johnnie Russell III, Deceased, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 11-L-421 |
| PROVENA HOSPITALS, d/b/a Provena Mercy Medical Center, | ) ) ) | Honorable Mark Pheanis, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Zenoff and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1     Johnnie Russell III was a patient of the defendant, Provena Hospitals, doing business as Provena Mercy Medical Center. The day after Russell was admitted, a nurse discovered that he had a gun. Shortly thereafter, during a confrontation with the Aurora Police Department, Russell was shot to death. The plaintiff, Dorothy Coleman, Russell's sister and the administrator of his estate, filed a wrongful-death action against the defendant, alleging that it was negligent in not searching Russell for weapons on the day he was admitted. The circuit court of Kane County subsequently granted the defendant's motion for summary judgment, finding that the plaintiff could not establish that the defendant had proximately caused Russell's death, because there was

no evidence that Russell had a gun when he was admitted. For the reasons that follow, we reverse and remand for additional proceedings.

¶ 2                                    BACKGROUND

¶ 3    In November 2006, Russell was shot to death after he pulled a gun and engaged in a confrontation with Aurora police officers while being evaluated at the defendant's hospital. The plaintiff initially filed suit against both the Aurora Police Department and the defendant in federal court, but she later voluntarily dismissed that action as to the defendant. In 2011, the plaintiff filed a wrongful-death action against the defendant in the circuit court of Kane County. The complaint alleged that the defendant's agents and employees were aware of Russell's "mentally defective condition and prior psychiatric history" but failed to conduct a reasonable search to determine whether Russell possessed any contraband that could cause harm to himself or others.

¶ 4    In December 2011, the defendant filed its answer, asserting the affirmative defense of comparative negligence and alleging that one or more of Russell's acts "was the proximate cause of his death." Specifically, the defendant asserted that Russell "came to Provena Mercy Medical Center of his own accord carrying an inherently dangerous weapon, namely a gun." The affirmative defense further alleged that the defendant was entitled to offset any judgment in favor of the plaintiff by "an amount commensurate with [Russell's] own degree of comparative negligence." The plaintiff did not file an answer to the affirmative defense.

¶ 5    During the pretrial proceedings, the defendant filed a motion for summary judgment, arguing that there was no evidence that its acts or omissions were a proximate cause of Russell's death. On July 1, 2014, the trial court (Judge F. Keith Brown) denied the motion, noting the submission of evidence that agents of the defendant had been aware that Russell was exhibiting

"paranoid, psychotic, and aggressive behavior" and knew of his psychiatric history, which included a report that he had threatened to kill his neighbors with his guns; had already sedated Russell once after he became aggressive with staff and had decided to transfer him to the behavioral health unit; and had had Russell remove his clothing and don a hospital gown but had failed to check his belongings for items that could cause harm to Russell or others. The trial court found that this evidence presented a genuine dispute as to whether the conduct of the defendant's agents was a "substantial factor or a material element in bringing about" (*i.e.*, a proximate cause of) Russell's death. The case was given a trial date of November 17, 2014, with a pretrial conference to be held on November 6. On October 22, 2014, the defendant filed a motion to deem its affirmative defense admitted, on the basis that the plaintiff had not filed an answer denying it.

¶ 6    On October 23, 2014, the trial court (Judge Thomas Mueller) granted the defendant's motion to deem the affirmative defense admitted. The defendant subsequently filed a motion for judgment on the pleadings, arguing that, as the affirmative defense had been deemed admitted, the plaintiff could not establish that any of the defendant's conduct was the proximate cause of Russell's death. On November 6, the trial court granted the defendant's motion and entered judgment on the pleadings in favor of the defendant. Following the denial of her motion to reconsider, the plaintiff appealed.

¶ 7    On December 18, 2015, this court reversed the trial court's judgment and remanded for additional proceedings. *Coleman v. Provena Hospitals*, 2015 IL App (2d) 150368-U (*Coleman I*). We explained that, read liberally, the plaintiff's complaint alleged that Russell was suffering from an impaired mental state at the time of the incident. Specifically, it alleged that, when Russell was admitted to the hospital, he was "suffering from conditions including altered mental

stability, *** speech and language deficits, paranoid personality and Dilantin toxicity." The complaint also alleged that Russell was in the process of being transferred from the emergency room to the behavioral health unit. These allegations of an impaired mental state controverted the affirmative defense's allegations that Russell was acting "knowingly" or "willfully" during the incident. They also raised a fair question as to whether Russell was able to appreciate the consequences of his actions at the time, the recklessness and dangerousness of those actions, and the need to follow the orders of medical personnel and the police. Thus, we held, the trial court erred in finding that the allegations of the affirmative defense regarding Russell's mental state had been admitted. *Id.* ¶ 19.

¶ 8 We also found that, to the extent that the affirmative defense alleged that Russell's actions amounted to comparative negligence and were "the proximate cause of his death," those allegations were conclusions that were not admitted by the failure to reply. We further found, however, that the plaintiff did admit certain factual allegations, specifically that Russell came to the hospital while carrying a gun on his person and that he took hospital staff and patients hostage. *Id.* ¶¶ 20-21.

¶ 9 Pursuant to Illinois Supreme Court Rule 366(b) (eff. Feb. 1, 1994), we modified the trial court's order of October 23, 2014, to deem admitted only the affirmative defense's allegations of fact that did not relate to the defendant's mental state and were not conclusory. Based on the modified trial court order, we held that the trial court erred in determining that the admission of those facts mandated the entry of judgment on the pleadings in favor of the defendant. *Coleman I*, 2015 IL App (2d) 150368-U, ¶¶ 22, 25.

¶ 10 Following remand, on February 2, 2017, the defendant filed a motion for summary judgment on the basis that the plaintiff had failed to present evidence to support the element of

proximate cause. The defendant asserted that there was no evidence that the defendant had a gun when he was admitted, as it was just as plausible that he obtained the gun sometime later. In response, the plaintiff argued that questions of material fact remained that precluded the entry of summary judgment. In support of her response, the plaintiff relied on the 2013 opinions and deposition testimony of her expert, Timothy Hawkins. Hawkins stated that the defendant had a policy to search for contraband when a patient was admitted to the behavioral health unit. Hawkins opined that the defendant should have adhered to that policy throughout the medical center. Hawkins opined that, if the defendant's staff had done that, they would have found the gun and confiscated it pursuant to the "Custody of Firearms Presented at Provena Mercy Center" policy and Russell would be alive today.

¶ 11 On April 6, 2017, the trial court (Judge Mark Pheanis) granted the defendant's motion for summary judgment, holding that there was no evidence that would allow the plaintiff to establish proximate cause. The trial court explained:

"We do not have any evidence, number one, that had the Mercy mental health rules and regulations for a search been followed, that this particular weapon would have been found. And the crux of this case, according—and it's really a case that comes down to the expert testimony, is that there shouldn't have been this binary set of rules. The search should have been followed in the emergency room for someone who exhibited the type of presentation that the decedent did. And the problem we have with that is, without evidence as to whether that search would have disclosed the weapon, there is no proximate cause. And a jury is going to have to speculate as to whether that would have occurred.

Tie in, in addition to that, the fact that we don't know—we don't have any evidence that the gun was in his possession at the time he came into the hospital as opposed to being provided to him later, and I know that's, that's a difficult—it's a difficult ruling, but I can't allow a jury to simply use speculation, conjecture, or guess to make those conclusions that are really necessary. And that's why I asked the question, are there any facts, do we have any facts whatsoever, and would the Mercy mental health policy have revealed that. And the only way I can see that it would reveal that is if it required strip search or some type of metal detector/wanding-type thing.

Without those two actions, simply asking someone if he has a weapon, simply asking someone to empty their pockets, and relying on the compliance of the patient isn't going to necessarily solve this particular situation."

¶ 12 Following the trial court's ruling, the plaintiff filed a timely notice of appeal.

¶ 13                                                         ANALYSIS

¶ 14 On appeal, the plaintiff argues that the trial court erred in granting the defendant's motion for summary judgment, because a question of fact remains as to whether the gun would have been recovered from the defendant had a proper search been conducted. In response, the defendant maintains that summary judgment in its favor was proper because, not only did its actions not proximately cause Russell's death, it owed no duty to Russell to protect him from his own criminal acts. The defendant further argues that summary judgment was proper because the plaintiff cannot recover any damages that were based on Russell's criminal acts.

¶ 15 The purpose of a motion for summary judgment is to determine whether a genuine issue of material fact exists (*People ex rel. Barsanti v. Scarpelli*, 371 Ill. App. 3d 226, 231 (2007)), and such a motion should be granted only when "the pleadings, depositions, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (735 ILCS 5/2-1005(c) (West 2016)). In determining the existence of a genuine issue of material fact, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Summary judgment may be granted only where the facts are susceptible to a single reasonable inference. *Consolino v. Thompson*, 127 Ill. App. 3d 31, 33 (1984). An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment is incorrect as a matter of law. *Clausen v. Carroll*, 291 Ill. App. 3d 530, 536 (1997). We review *de novo* the trial court's grant of a motion for summary judgment. *AUI Construction Group, LLC v. Vaessen*, 2016 IL App (2d) 160009, ¶ 16.

¶ 16    In order to succeed in a negligence action, the plaintiff must prove three elements: (1) the defendant owed a duty of care, (2) the defendant breached that duty, and (3) the plaintiff's resulting injury was proximately caused by the breach. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995). Whether the defendant owed a duty to the plaintiff is a question of law, to be decided by the court. *Id.* Whether the defendant breached its duty and whether the breach was the proximate cause of the injury are factual questions, for a jury to decide, as long as there is a genuine issue of material fact about breach and causation. *Stanphill v. Ortberg*, 2017 IL App (2d) 161086, ¶ 30.

¶ 17    The defendant's argument that it did not owe Russell a duty to protect him is without merit. A court will find a duty where a plaintiff and a defendant stand in such a relationship to one another that the law imposes upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶¶ 18-21. The

"relationship" referred to in this context acts as a shorthand description for the sum of four factors: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. *Id.* The determination of such a "relationship," as sufficient to establish a duty of care, requires considerations of policy inherent in these four factors, and the weight accorded each factor in any given analysis depends on the circumstances of the case at hand. *Id.* It has long been recognized, however, that hospitals are under a duty to exercise reasonable care to protect their patrons from harm. *Darling v. Charleston Community Memorial Hospital*, 33 Ill. 2d 326, 331 (1965); *Stearns v. Ridge Ambulance Service, Inc.*, 2015 IL App (2d) 140908, ¶ 16; *Stogsdill v. Manor Convalescent Home, Inc.*, 35 Ill. App. 3d 634, 662 (1976).

¶ 18      The defendant insists that it owed no legal duty to Russell, because the harm that befell him was not reasonably foreseeable. The defendant maintains that it was not foreseeable that Russell would engage in a series of bizarre acts that would ultimately result in his being shot and killed by police officers.

¶ 19      Arguably, the defendant here is improperly positing a "fact-specific formulation of duty." *Stearns*, 2015 IL App (2d) 140908, ¶ 15. In any event, the defendant's argument is undermined by its policy to search people going into its behavioral health unit. The apparent purpose of this policy is to prevent patients who are possibly mentally ill from harming themselves or others. Based on the existence of this policy, it was reasonably foreseeable that someone would be injured if the policy were not adhered to. Hawkins asserted that there was no reason why the policy should not exist throughout the hospital. We believe that the allegations of the plaintiff's complaint sufficiently established that the defendant owed Russell a duty to protect him from harming himself or someone else.

¶ 20     We next turn to proximate cause.  There are two requirements for a showing of proximate cause: cause in fact and legal cause.  *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992); see also *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538, 548-49 (2005).  At issue in this case is cause in fact.  Cause in fact looks for sufficient facts to establish a reasonable certainty that a wrongdoer's conduct caused the damages involved.  *Lee*, 152 Ill. 2d at 455.

¶ 21     The trial court essentially found that cause in fact did not exist, because there was no evidence presented that, had Russell been searched, the gun would have been discovered.  We disagree.  Hawkins testified that, if Russell had been searched, there was a high probability that the gun would have been found.  This testimony is consistent with what the defendant alleged in its affirmative defense and what in *Coleman I* we found the plaintiff to have admitted:  Russell had the gun with him when he entered the defendant's care.  The trial court's suggestion that it was possible that Russell got the gun sometime after he was admitted was therefore both improper speculation (*Harris Trust & Savings Bank v. Otis Elevator Co.*, 297 Ill. App. 3d 383, 394 (1998))  and contrary to the law of the case  (*Radwill v. Manor Care of Westmont, IL, LLC*, 2013 IL App (2d) 120957, ¶ 8).

¶ 22     Furthermore, Hawkins' testimony supported another causal link:  if the defendant's staff had removed the gun from Russell, he would not have engaged in the altercation with the police that resulted in his death.  Thus, through Hawkins' testimony, the plaintiff presented enough evidence to raise a genuine issue concerning cause in fact.

¶ 23     The defendant insists that there is no evidence that, had Russell been searched, (1) Russell would have voluntarily yielded possession of the gun or (2) the gun would have been confiscated without conflict.  Both of those arguments might be true.  However, those arguments should be directed to the trier of fact, not this court, as we cannot say as a matter of law and

based on the evidence in the record that any search of Russell would have been pointless and would not have prevented his untimely death.

¶ 24    In so ruling, we find the defendant's reliance on *Schuler v. Mid Central Cardiology*, 313 Ill. App. 3d 326, 335 (2000), to be misplaced.  In that medical malpractice case, the plaintiff alleged that one doctor had gotten a second doctor to alter his diagnosis of the decedent.  *Id.* at 334. The plaintiff, however, presented no direct or circumstantial evidence to support that allegation.  *Id.* at 336.  On review, the appellate court held that the trial court had properly instructed the jury to disregard a third doctor's testimony regarding the possibly changed diagnosis, because that testimony was based on nothing but conjecture.  *Id.* at 335-36.  Here, unlike in *Schuler*, there was sufficient evidence to support the plaintiff's theory that the defendant's failure to search Russell when he was admitted caused or contributed to Russell's death.

¶ 25    We are also unpersuaded by the defendant's argument that it cannot be liable for Russell's death because the police officers' response to Russell's actions was the superseding proximate cause of Russell's death.   The negligence of a defendant will not constitute a proximate cause of a plaintiff's injuries if some intervening act supersedes the defendant's negligence, but if the defendant could reasonably foresee the intervening act, that act will not relieve the defendant of liability.  *Bentley v. Saunemin Township*, 83 Ill. 2d 10, 15 (1980).  Again, the ostensible reason for searching some patients before they entered the hospital was to protect them from being harmed or harming others.  Thus, it was reasonably foreseeable to the defendant that, if it did not search Russell before he was admitted to the hospital, he might be harmed.  That the defendant could not necessarily foresee the specific harm that would befall Russell is of no significance.  See *Colonial Inn Motor Lodge, Inc. v. Gay*, 288 Ill. App. 3d 32, 45

(1997) (although the foreseeability of an injury will establish the legal-cause prong of proximate cause, the extent of the injury or the exact way in which it occurs need not be foreseeable).

¶ 26    Finally, we consider the defendant's argument that the plaintiff cannot recover for damages arising from Russell's criminal acts.  Relying on *Reed v. Witvoet*, 311 Ill. App. 3d 735, 740 (2000), the defendant insists that a party cannot recover if his own illegal acts contributed to his damages.  *Reed*, however, actually undermines the defendant's argument.  In that case, a 13-year-old minor died in a farm accident.  The defendant had hired the minor at the request of one of the plaintiffs, the minor's father.  *Id.* at 736.  The minor's father also transported the minor to the workplace.  The minor's estate, consisting of his parents and his brother, filed a complaint against the defendant.  *Id.*  The defendant filed a motion for summary judgment, alleging that the plaintiffs had violated the Child Labor Law (820 ILCS 205/19 (West 1992)) when they allowed the defendant to employ the minor and that such conduct barred them from any recovery.  Relying on *Newton v. Illinois Oil Co.*, 316 Ill. 416 (1925), the trial court granted summary judgment, finding that the parents were prohibited from recovering damages by their participation in the minor's illegal employment.  *Reed*, 311 Ill. App. 3d at 737.  The trial court further found that the minor's brother could not recover where the parents' illegal act was a contributing cause of the death.  *Id.*

¶ 27    On appeal, the reviewing court affirmed the trial court's judgment as to the minor's parents but not as to his brother.  *Id.* at 740.  The reviewing court found that *Newton* remained good law as to the minor's parents.  *Id.*  However, in *Nudd v. Matsoukas*, 7 Ill. 2d 608, 615-16 (1956), the supreme court had reexamined the principles underlying *Newton* and held that public policy did not require barring an entire action simply because one beneficiary of the decedent's estate contributed to the injury.  *Reed*, 311 Ill. App. 3d at 740.  Based on *Newton* and *Nudd*, the

reviewing court held that, although the parents were barred from recovering damages, due to their violation of the Child Labor Law, that violation did not defeat the estate's ability to recover in a wrongful-death action arising out of the violation. *Id.*

¶ 28    Here, there is nothing in the record to suggest that the plaintiff gave Russell the gun that he possessed at the hospital. Although the trial court found that it was possible that the gun was provided to Russell after he was admitted to the hospital, as noted earlier that finding was improper as it was contrary to the law of the case. See *Radwill*, 2013 IL App (2d) 120957, ¶ 8. Accordingly, absent any evidence that the plaintiff contributed to Russell's deadly altercation with the police, she is not barred from pursuing her action against the defendant. See *Reed*, 311 Ill. App. 3d at 740.

¶ 29    At oral argument, the defendant refined its argument to emphasize that, because of Russell's criminal conduct, the plaintiff cannot recover on his behalf. In making this argument, the defendant relies on *Castronovo v. Murawsky*, 3 Ill. App. 2d 168 (1954). There, the decedent died after she consented to an illegal abortion that was negligently performed upon her. This court found that the decedent's estate was barred from any recovery based on the decedent's own "immoral or illegal act." *Id.* at 170-71. *Castronovo* is readily distinguishable from the case at bar. In that case, there is no indication that the decedent was suffering from any mental illness that impacted her judgment when she committed an illegal act. Conversely, in the instant case, and as the defendant acknowledges, Russell was acting with "a history of psychological difficulties" when he engaged in his fatal confrontation with the Aurora police. Russell's sanity at the time of the confrontation is therefore crucial in determining whether his actions were criminal. See 720 ILCS 5/6-2(a) (West 2016) ("A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks

substantial capacity to appreciate the criminality of his conduct.")  As questions of one's sanity and mental health are questions of fact and within the exclusive purview of the finder of fact (*People v. McCullum*, 386 Ill. App. 3d 495, 504 (2008)), Russell's possibly criminal conduct is not a basis on which to affirm the trial court's order of summary judgment.

¶ 30                                         CONCLUSION

¶ 31    For the reasons stated, the judgment of the circuit court of Kane County is reversed and the cause is remanded for additional proceedings.

¶ 32    Reversed and remanded.