No. 2--05--1275                                          filed: 1/23/07

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE ex rel. JOHN A. BARSANTI, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 05--CH--984 |
| | ) | |
| FRANK J. SCARPELLI, JR., | ) | Honorable |
| | ) | Donald J. Fabian, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The defendant, Frank J. Scarpelli, Jr., appeals from the December 22, 2005, summary judgment order of the circuit court of Kane County removing him from his position of Village of East Dundee trustee, a position to which he was elected in April 2003. The defendant argues that the trial court improperly found a conflict of duties between the village trustee position and the position of Dundee Township Park District commissioner, a position to which he was reelected in April 2005. For the following reasons, we affirm.

I. Background

The defendant was first elected to a six-year term as Dundee Township Park District commissioner in 1999. In 2003, he was sworn into the office of Village of East Dundee trustee. In April 2005, the defendant was elected to a second term as park district commissioner.

On August 25, 2005, the State filed a complaint in quo warranto, seeking the defendant's removal from his position as village trustee. Relying on People v. Brown, 356 Ill. App. 3d 1096, 1100 (2005), the complaint alleged that an impermissible conflict of interest arose from the fact that the defendant held both the park district and village positions at the same time. In Brown, the Illinois Appellate Court, Third District, held that the positions of City of Kankakee alderman and Kankakee County Park District board member were incompatible. Brown, 356 Ill. App. 3d at 1100.

On September 20, 2005, the State filed a motion for summary judgment. Again relying on Brown, the State argued that the positions of village trustee and park district commissioner are incompatible with each other and that the acceptance of one of those offices is ipso facto a resignation of the other office. The State argued that these positions are incompatible because there are a myriad of possible relationships between the two positions that creates a potential for a conflict of duties. Furthermore, the State argued that the actions of the defendant in the two positions demonstrated that the offices were in fact incompatible.

The State noted that at a meeting on September 20, 2004, the defendant, acting as a village trustee, motioned to adopt, and did vote to adopt, an intergovernmental agreement with the Dundee Township Park District, of which the defendant was a commissioner. At that same meeting, the defendant abstained from voting on a motion to adopt an ordinance amending the criteria for requiring a contribution in lieu of park and school sites, even though the defendant was one of the trustees motioning the question. The State further noted that, on June 2, 2004, the defendant had also abstained from voting on a land/cash resolution at a park district meeting involving an offer by the village to increase the land donation requirement if the park district indemnified the village in case of a lawsuit.

The State further argued that the defendant's actions regarding water agreements between the village and the park district demonstrated that his two offices were incompatible. On April 2, 2003, at a park district meeting, notwithstanding that he had just been elected a village trustee, the defendant advocated against the village by suggesting that the park district was disadvantaged by the village's rate increases for water and should look to Carpentersville as an alternative. On May 16, 2005, the defendant abstained from voting on a direction to the village attorney to draft an intergovernmental agreement with the Bonnie Dundee Golf Course, which is owned and operated by the park district, regarding a critical water issue. On May 18, 2005, the defendant advised the park district board of the village's position on the intergovernmental agreement regarding water.

The State additionally argued that the two positions were incompatible because of the intergovernmental cooperation required between the two governmental units. The State noted that the park district and the village had worked on various community events together, such as the Band and Movie night. The village and the park district had also interacted on the Bonnie Dundee Golf Course liquor license application.

On September 29, 2005, the defendant filed an answer, denying the material allegations of the State's complaint. The defendant also raised the affirmative defenses of laches and unclean hands. The defendant argued that he had held the two positions contemporaneously since 2003 without any objection by the State. Had he known that there were any concerns of incompatibility between the two positions, the defendant asserted, he would not have run for reelection as a park district commissioner in 2005. The defendant noted that if the State is successful in its action, he will be ousted from his position as Village of East Dundee trustee. Thus, the defendant argued, he would be prejudiced by the State's unreasonable and inexcusable delay in bringing its action.

The defendant further argued that the State had unclean hands. The defendant noted that he was not sworn into his second term as park district commissioner until May 18, 2005, over three weeks after Brown was decided. The defendant argued that had the State informed him before May 18, 2005, of the potential problem of the incompatibility of his offices, he could have chosen whether to resign from one of the positions. Since the State did not inform him of this potential conflict, the defendant argued, it would now be inequitable to grant the State the relief it requested.

On November 16, 2005, the defendant filed a response to the State's motion for summary judgment. The defendant argued that summary judgment was improper because alleged incompatibility must be determined on a case-by-case basis. The defendant further argued that the two positions in which he was serving were not identical to the two positions in Brown. The defendant further reiterated his affirmative defense of laches, alleging that the State's action was untimely because he had been serving in both offices for two years.

On December 6, 2005, the State filed a motion to strike the defendant's affirmative defenses of laches and unclean hands. Relying on People ex rel. Phelps v. Kerstein, 413 Ill. 333 (1952), the State argued that the defendant could not raise such defenses in a quo warranto action. The State further argued that laches was inapplicable because it had brought its quo warranto action within four months of Brown being decided.

On December 20, 2005, the defendant filed a response. Relying on People v. Junior College District No. 526, 42 Ill. 2d 136 (1969), the defendant argued that the equitable defenses of laches and unclean hands were available as defenses to quo warranto actions even if the public interest was involved. The defendant further argued that the minutes of meetings that the State had submitted in support of its motion for summary judgment did not demonstrate that the offices in which he was

serving were incompatible. The defendant argued that the votes and recusals of which the State complained were over minor matters and caused no public detriment.

The defendant supported his response with his affidavit. In his affidavit, the defendant explained each of the votes that the State claimed was demonstrative of the incompatibility of his two elected offices. The defendant explained that the minutes from the Village of East Dundee board of trustees meeting of May 16, 2005, and the minutes from the Dundee Township Park District meetings of May 16, 2005, and June 1, 2005, refer to a potential water agreement between the park district and the village. The defendant further explained that the Village of East Dundee public works department informed the Village of East Dundee board of trustees in early 2005 that the village well had gone dry and an alternative for water was needed. The park district had a private well for Bonnie Dundee Golf Course that had an abundance of water. The Village of East Dundee did some research on a tie-in to the Bonnie Dundee private well, and it appeared feasible. In May and June 2005, there was discussion concerning an intergovernmental agreement to allow for this arrangement between the Bonnie Dundee Golf Course and the village. The defendant explained that the arrangement would have been mutually beneficial because it would have relieved the village's water shortage and provided reimbursement for the park district for the use of the Bonnie Dundee Golf Course's private well. However, the defendant stated that later in 2005 village staff advised the village that electronic monitoring of the village well had revealed that a water shortage no longer existed and the intergovernmental agreement with the Dundee Township Park District was no longer necessary.

As to the land/cash resolution and intergovernmental agreements involving land/cash donations, the defendant noted that land/cash donations were referred to in the minutes from the Dundee Township Park District Board meetings of June 2, 2004, and May 18, 2005. The defendant

explained that developer donations are strictly between the Village of East Dundee and the developer. The Dundee Township Park District does not have any power to approve or disapprove a development based on a land/cash donation, but only to give input to the village as to the going rate. The defendant also stated that the village simply enters into an intergovernmental agreement with the park district to establish the going rate.

The defendant additionally stated that he had never served on the village's special events committee. He had also not been a member of the village's liquor control commission. The defendant stated that he had abstained from discussion at a board of trustees meeting concerning the Tamarack Development, because he was employed by a family business that owned part of the property in the Tamarack Development.

On December 22, 2005, following a hearing, the trial court granted the State's motion for summary judgment. Relying on Brown, the trial court found that the two positions the defendant held were incompatible as a matter of law. The trial court also found that there was actual conflict between the two positions, demonstrated by the examples set forth in the State's motion for summary judgment. The trial court additionally found that the affirmative defenses of laches and unclean hands were not applicable as a matter of law. The trial court therefore declared a vacancy in the office of trustee of East Dundee, the position that the defendant had held. The trial court ordered the defendant's removal from that position, but later stayed enforcement until the conclusion of this appeal.

## II. Discussion

On appeal, the defendant argues that the trial court erred in granting the State's motion for summary judgment. Specifically, the defendant argues that (1) the trial court erred in relying on

Brown, because that case was wrongly decided; (2) Brown is factually distinguishable from the case at bar; (3) the State's evidence did not establish that the offices he was serving in were incompatible; and (4) the trial court erred in determining that he could not utilize the equitable defenses of laches and unclean hands.

At the outset, we note that the purpose of a motion for summary judgment is to determine whether a genuine issue of triable fact exists (Purtill v. Hess, 111 Ill. 2d 229, 240 (1986)) and that such a motion should be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (735 ILCS 5/2--1005(c) (West 2004)). An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment was incorrect as a matter of law. Clausen v. Carroll, 291 Ill. App. 3d 530, 536 (1997).

Two public offices are incompatible under the common law when the " 'written law of a state specifically prohibits the occupant of either one of the offices in question from holding the other and, also, where the duties of either office are such that the holder of the office cannot in every instance, properly and fully, faithfully perform all the duties of the other office.' " People v. Claar, 293 Ill. App. 3d 211, 215 (1997), quoting Myers v. Haas, 145 Ill. App. 283, 286 (1908). The incompatibility doctrine has been further explained as follows:

> " 'Incompatibility of offices exists where there is a conflict in the duties of the offices, so that the performance of the duties of the one interferes with the performance of the duties of the other. They are generally considered incompatible where such duties and functions are inherently inconsistent and repugnant, so that because of the contrariety and antagonism

which would result from the attempt of one person to discharge faithfully, impartially, and efficiently the duties of both offices, considerations of public policy render it improper for an incumbent to retain both.

At common law, it is not an essential element of incompatibility of offices that the clash of duty should exist in all or in the greater part of the official functions. If one office is superior to the other in some of its principal or important duties, so that the exercise of such duties may conflict, to the public detriment, with the exercise of other important duties in the subordinate office, then the offices are incompatible.' " Rogers v. Village of Tinley Park, 116 Ill. App. 3d 437, 441 (1983), quoting 63 Am. Jur. 2d Public Officers and Employees §73 (1972).

Whether two offices are incompatible must be determined on a case-by-case basis. People ex rel. Fitzsimmons v. Swailes, 101 Ill. 2d 458, 469 (1984).

In Brown, at issue was whether the positions of Kankakee County Park District board member and City of Kankakee alderman were incompatible. Brown, 356 Ill. App. 3d at 1100. In resolving this question, the Illinois Appellate Court, Third District, reviewed nine different statutory sections that allow a park district and a municipality to enter into contracts with one another. Brown, 356 Ill. App. 3d at 1099. These statutes include the Park District Code (70 ILCS 1205/1--1 et seq. (West 2004)), which allows for "joint ownership with one or more cities, villages or incorporated towns of real and personal property used for park purposes by one or more park districts" (70 ILCS 1205/8--1(f) (West 2004)). In the event that a municipality and a park district participate in joint ownership, they must enter into a written agreement that is fair, just, and equitable to all parties. 70 ILCS 1205/8--1(f) (West 2004). A park district may also, under the Park District Code, grant

licenses, easements, and rights of way to a municipality for utilities and other needs (70 ILCS 1205/8--11 (West 2004)); convey a fee interest in real estate to a municipality (70 ILCS 1205/10--3 (West 2004); 50 ILCS 605/0.01 et seq. (West 2004)); sell or lease park property to a municipality for public use (70 ILCS 1205/10--7 (West 2004)); and enter into cooperative agreements with respect to the development, operation, financing, and participation in joint recreational programs of various types (70 ILCS 1205/8--18 (West 2004)).

The Park District Airport Site Act allows a park district to convey property or property rights to "any city or village authorized to establish, maintain and regulate airports" and to convey to a municipality the right to construct and maintain roads, bridges, or other connections to the airport across park district property. 70 ILCS 1300/1 (West 2004). The Park Commissioners Street Control (1907) Act allows a municipality to enter into an agreement with a park district to provide for the maintenance of roads adjoining park property. 70 ILCS 1260/1 (West 2004). A park district may also connect roads under its control with the roads of any adjacent municipality and take control of any municipal roads inside park property with the consent of the municipality. 70 ILCS 1265/1 (West 2004).

The reviewing court found that this myriad of possible relationships created a potential conflict of duties that would result in the incompatibility of the offices. Brown, 356 Ill. App. 3d at 1100. The reviewing court further found that the defendant's actions had demonstrated that his positions were incompatible, evidenced by the fact that he had to recuse himself in a matter before the park district as to whether the City of Kankakee should be allowed to dump leaves on Kankakee park district property. Brown, 356 Ill. App. 3d at 1100. The reviewing court found that the

defendant's very need for recusal was " 'compelling proof' " that incompatibility existed. Brown, 356 Ill. App. 3d at 1100, quoting Rogers, 116 Ill. App. 3d at 446.

We note that the positions at issue herein, township park district commissioner and village trustee, are similar to the elected positions in Brown. The positions of township park district commissioner and village trustee can interact in the same manner that the Brown court described as possible between a city alderman and a county park board commissioner. See Brown, 356 Ill. App. 3d at 1099. Furthermore, as was the case in Brown, the defendant herein had to recuse himself from at least one vote because he was simultaneously serving in the positions of Dundee Township Park District commissioner and Village of East Dundee trustee. As we will discuss below, the defendant's need to recuse himself from voting on the water agreement between the village and the park district demonstrates that there is a conflict of duties between his two elected positions. Thus, for the same reasons set forth in Brown, we believe that the positions the defendant holds are incompatible.

In so ruling, we reject the defendant's argument that Brown was wrongly decided because its analysis is improperly premised on whether two positions will potentially be in conflict. The defendant argues that it is proper to consider only whether there has already been an actual conflict. In making this argument, the defendant relies on Rogers and Swailes. We believe that neither of these cases supports the defendant's argument. In Rogers, the plaintiff was forced to resign from his position as a police officer before he ever cast a vote as a county board member, on the basis that there would eventually be a conflict of interests in the positions he held. Rogers, 116 Ill. App. 3d at 439. In Swailes, the defendant was removed from his position on the Du Page County Board because he was simultaneously holding the position of York Township assessor. Swailes, 101 Ill. 2d at 469. The supreme court held:

"[S]ince the township assessor's position is obviously subordinate to the position of supervisor of assessments, and as a county board member defendant Swailes votes on who will be his supervisor, there may be a possible conflict and therefore *** Swailes cannot hold the offices of township assessor and county board member because they are incompatible." (Emphasis added.) Swailes, 101 Ill. 2d at 469.

Rather than examining whether there has been an actual conflict in the two offices in which a person is serving, Illinois courts look to whether there will eventually be a conflict. See Swailes, 101 Ill. 2d at 469; Rogers, 116 Ill. App. 3d at 445. We do not believe that the State has to wait until an actual conflict materializes before it can proceed with a quo warranto action. The defendant's argument to the contrary is therefore without merit.

We also reject the defendant's argument that his votes and recusals from votes on matters that involved both of his elected positions do not prove that those two positions are incompatible. In so arguing, the defendant sets forth explanations why each of his votes and recusals does not demonstrate that his offices are incompatible. We need not address each of the defendant's votes and recusals, because we believe that his abstention from an important vote regarding a possible water agreement between the village and the park district demonstrates the reality that the two positions are incompatible.

On May 16, 2005, at a village meeting, the director of public works submitted a report recommending that the village "immediately" connect to the well at the park district's golf course. The village's administrator distributed a draft intergovernmental agreement and described the situation as "critical." The defendant abstained from voting on this proposed agreement.

The citizens of East Dundee are entitled to have their interests represented and their voices heard through their elected representatives. These citizens are deprived of their voices whenever an elected official must abstain from a vote because to vote would conflict with his duties in another elected office. As explained in Brown, the law has provided a way to avoid this conflict: forcing the officeholder to abandon one of the positions. See Brown, 356 Ill. App. 3d at 1101. Based on the conflict of duties apparent in the two offices in which the defendant is serving, the trial court properly found that the two positions are incompatible. See Rogers, 116 Ill. App. 3d at 443, quoting Kaufman v. Pannuccio, 121 N.J. Super. 27, 31, 295 A.2d 639, 641 (1972) (" 'If the duties of the two offices are such that when "placed in one person they might disserve the public interest, or if the respective offices might or will conflict even on rare occasions, it is sufficient to declare them legally incompatible" [Citation.]' ").

The defendant maintains that his recusal from voting on the proposed water agreement cannot serve as a basis for finding that the offices are incompatible, because the park district and the village never actually entered into a water agreement. We find the lack of an actual agreement between the village and the park district to be immaterial. Village officials described the water agreement as "critical" and requiring "immediate" attention. Despite this, the defendant abstained from voting on this agreement, ostensibly because of his position on the park district board. The defendant's need to recuse himself from this vote, not whether any agreement was ever actually reached between these two governmental units, is what demonstrates that the two offices in which he is serving are incompatible. See Rogers, 116 Ill. App. 3d at 446.

Finally, we reject the defendant's contention that the trial court erred in determining that he could not raise the equitable defenses of laches and unclean hands in response to the State's quo

warranto action. The general law in Illinois is that the defense of laches may not be asserted where a complaint is filed and the public interest is involved. Kerstein, 413 Ill. at 342. An exception is made, however, if, as a result of inexcusable delay and public acquiescence, a judgment of ouster would result in great public inconvenience and detriment. Therefore, in a quo warranto proceeding, the court should consider all of the circumstances of the case. People ex rel. Hanrahan v. Village of Wheeling, 42 Ill. App. 3d 825, 840 (1976). If it appears that the public will suffer harm rather than benefit, the public interest requires that laches be an available bar to the proceedings. See Junior College District No. 526, 42 Ill. 2d at 139 (laches defense was permitted where an action was filed two years after district formation, the financial cost to the public would be substantial, and personnel and student disruption would take place); People ex rel. Lindsey v. Board of Education, 3 Ill. 2d 159, 167 (1954) (permitting a laches defense where a school district organization was challenged after a five-year delay, where there was no excuse for the delay, and substantial public expense and student inconvenience would result if the action were successful); People ex rel. Cherry Valley Fire Protection District v. City of Rockford, 122 Ill. App. 2d 272, 277-78 (1970) (allowing a laches defense where substantial public money had already been expended).

Considering all the circumstances of this case, we believe that the trial court properly found as a matter of law that the defendant could not raise the defenses of unclean hands and laches. The record reveals that the State did not bring its action after an "inexcusable delay." Rather, the State brought its action within four months after the Brown court had determined that offices similar to those in which the defendant is serving were incompatible. Cf. Swailes, 101 Ill. 2d at 469 (determining that the defendant should have been ousted from one of the positions at issue even though the defendant held both positions simultaneously for approximately 12 years). Furthermore,

nothing in the record suggests that the State acted with unclean hands in bringing its action against the defendant.  As such, the defendant's contention is without merit.

### III.   Conclusion

For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

Affirmed.

BOWMAN and HUTCHINSON, JJ., concur.