2021 IL App (2d) 200681-U
No. 2-20-0681
Order filed July 26, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CHRISTOPHER D. PUMILIA, | ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-MR-679 |
| CITY OF ROCKFORD, | ) ) | Honorable Donna R. Honzel, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justice Zenoff and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) Trial court properly granted the plaintiff summary judgment because the plaintiff complied with the City ordinance to reestablish the special use of his property; (2) trial court erred in awarding the plaintiff damages because the actions of the City's staff were afforded immunity under the Tort Immunity Act.

¶ 2    The plaintiff, Christopher Pumilia, sought to sell used cars at a former used car lot in Rockford. The defendant, the City of Rockford (the City), refused to allow him to sell cars, finding that a special use permit to sell cars at the property had lapsed. The plaintiff subsequently filed a complaint in the circuit court of Winnebago County seeking a declaration that he had the right to sell cars at the property. The trial court granted the plaintiff summary judgment on his complaint

and awarded him some damages. On appeal, the City argues that the trial court's ruling was erroneous. For the reasons that follow, we affirm the trial court's order awarding the plaintiff summary judgment, but we vacate its award of damages.

¶ 3                                    I.   BACKGROUND

¶ 4       The property at issue is located at 1621, 1627 and 1629 Rural Street in Rockford. In 1960, Gary Carlson began using the property as a used car dealership. In 1988, he obtained a special use permit from Rockford to use the 1621 Rural Street lot for the used car dealership. That special use permit did not have an expiration date. Carlson closed his business on December 31, 2017.

¶ 5       In September 2018, the plaintiff expressed interest in buying the property and using it as a used car dealership. On November 16, 2018, the plaintiff closed on the property. As he believed that the office needed some work prior to re-opening, he began working on it in mid-December. At that same time, he obtained commercial insurance coverage for the property as well as liability coverage for vehicles which would be held for sale there. He also had the parking lot painted and sealed.

¶ 6       On December 15, 2018, the plaintiff paid the business bond for 2018-2019 in the name of K & C's Auto Sales and opened a business checking account. Also that month, he contacted a sign company (Got Signs on 7th Street) to replace the plastic placards/name inserts for Carlson Motors with signs for K & C's Auto Sales. As part of obtaining his dealer's license, he had to have commercial insurance, a business bond, and signs indicating a used car business.

¶ 7       On January 23, 2019, the sign company filed for the sign permit. Brenda Muniz, a land use planner for the City, reviewed the sign permit application. She reviewed aerial photos which indicated that the number of vehicles had decreased over time. She also checked water usage records which showed little water had been used over the last 11 months. She therefore determined

that the property had been vacant for over a year and not used as a car dealership for over a year. As such, she believed that the special use permit had expired. On February 4, 2019, Muniz informed the sign company that its permit application was denied based on the expiration of the special use permit.

¶ 8 On February 11, 2019, Carlson informed the plaintiff that there was a problem with the City as Carlson had received a violation notice for not removing his signage within four months of ceasing business. The plaintiff thereafter contacted the City for the first time and talked with Muniz. In that conversation, Muniz told him the special use permit that Carlson had was expired because Carlson's business had been closed for over a year and that the plaintiff could not touch the signs until he had filled out a special use permit application.

¶ 9 Sometime in February 2019, the City's Zoning Officer, Scott Capovilla, reviewed the special use permit for the property and decided that it had lapsed. He also determined that the property failed to meet all six "findings of fact" criteria as set forth in section 63-005 of the Rockford Zoning Code (the Code) (Rockford Zoning Code, § 63-005 (adopted Apr. 4, 2006)) and as required by section 63-012-C of the Code (Rockford Zoning Code, § 63-012-C (adopted Apr. 4, 2006)).

¶ 10 On March 8, 2019, the plaintiff personally spoke with Muniz, and she helped him fill out the application for a special use permit. She told him that an additional reason for requiring his permit application was that he was a new owner and as such he was required to seek a new special use permit. Around the same time he spoke to Muniz, City employee Samuel Bellone also told the plaintiff that because he was a new owner he had to get a special use permit. On April 12, 2019, the plaintiff applied for a special use permit.

¶ 11    On May 19, 2019, the City staff made six positive findings of fact pursuant to section 63-005 of the Code and recommended to the Zoning Board of Appeals (ZBA) that the plaintiff's application for a special use permit be approved.  On June 18, 2019, however, the ZBA denied the plaintiff's application for a special use permit.  After further review, on July 15, 2019, the City Council denied the plaintiff's application for a special use permit as well.

¶ 12    On July 23, 2019, the plaintiff filed a complaint in the circuit court for administrative review of the ZBA's decision denying his application for a special use permit.  The plaintiff subsequently amended his complaint three times, seeking the additional relief of restraining the City from interfering with his efforts to use the property as a used car dealership and also monetary damages for the "arbitrary and capricious restrictions imposed" on the property by the City.  On March 4, 2020, the plaintiff filed a motion for summary judgment on his third amended complaint.

¶ 13    On June 4, 2020, the City filed a response to the plaintiff's motion for summary judgment. The City argued that (1) the plaintiff's claims should be dismissed because he had failed to exhaust his administrative remedies by not appealing the zoning officer's decision; (2) the special use permit had lapsed because the property was not being used as a used car lot; and (3) the plaintiff was not entitled to any damages under the Illinois Local Governmental and Local Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-201 (West 2018)) and because none of the City's employees' actions constituted willful and wanton conduct. Alternatively, the City argued that if the trial court found that the City was liable, the plaintiff's damages should be limited to his special use permit application fee, the bond premium, and his court filing fees.

¶ 14    On June 10, 2020, the City filed a cross-motion for summary judgment based on the same reasons it had set forth in opposing the plaintiff's motion for summary judgment.

¶ 15    On September 1, 2020, following a hearing, the trial court granted summary judgment for the plaintiff. The trial court found that the City staff, in determining that the special use permit for the property had lapsed, disregarded all the evidence which indicated that it had not. The trial court further found that the City staff had not complied with the applicable ordinance as it conducted a six "findings of fact" review before the plaintiff had even requested such a review. The trial court rejected the City's argument that the plaintiff had failed to exhaust his administrative remedies by not appealing Muniz's "decision" that the special use permit had lapsed because a reasonable person would not view her comments as a decision, only as information.

¶ 16    The trial court then noted that the plaintiff "took Ms. Muniz at her word and filled out the application and pursuant to that application staff conducted the review and issued the positive findings of fact." The trial court found that the plaintiff's application "was akin to requesting the staff to conduct this review required by [section] 63-012-C [of the Code] since it was clearly within the [time frame] the ordinance refers to." Once the City staff issued the positive findings of fact, the ordinance required the zoning clearance "shall be issued to reestablish special use." As such, based on the City staff issuing the positive findings of fact, there was no need for the ZBA to review the application.

¶ 17    The trial court further noted that the plaintiff had requested damages due to the actions of the City's staff. The trial court found that the City staff's actions were subject to immunity under the Tort Immunity Act. The trial court explained that although "[t]he City employees could certainly have been more willing to work with one of their citizens and more active in listening to the information plaintiff and Carlson were trying to present, but ultimately they did not act willfully, maliciously or with reckless disregard." Although the trial court found that the Tort Immunity Act applied, it nonetheless awarded the plaintiff his court costs, the $2500 business bond

he paid but which went unused, and the $5868 cost of coverage for vehicles garaged on the property for sale that also went unused. The trial court explained that the City had acknowledged those costs as appropriate.

¶ 18    Following the denial of its motion to reconsider, the City filed a timely notice of appeal.

¶ 19                                          II.   ANALYSIS

¶ 20    On appeal, the City raises three arguments. First, it claims that the trial court should have awarded it summary judgment because the plaintiff failed to exhaust his administrative remedies. Second, it contends that the facts clearly show that the original special use permit had lapsed and the plaintiff was required to file a new application. Third, the City argues that the Tort Immunity Act precluded an award of any damages to the plaintiff.

¶ 21    The purpose of a motion for summary judgment is to determine whether a genuine issue of triable fact exists (*People ex rel. Barsanti v. Scarpelli*, 371 Ill. App. 3d 226, 231 (2007)), and such a motion should be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" (735 ILCS 5/2-1005(c) (West 2018)). An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment is incorrect as a matter of law. *Clausen v. Carroll*, 291 Ill. App. 3d 530, 536 (1997). We review *de novo* the trial court's grant of a motion for summary judgment. *AUI Construction Group, LLC v. Vaessen*, 2016 IL App (2d) 160009, ¶ 16.

¶ 22    A "special use" is one that is expressly permitted within a zoning district by the controlling ordinance so long as the use meets certain criteria or conditions. *City of Chicago Heights v. Living Word Outreach Full Gospel Church & Ministries, Inc.*, 196 Ill. 2d 1, 16 (2001). " 'The purpose of special uses is to provide for those uses that are either necessary or generally appropriate for a

community but may require special regulation because of unique or unusual impacts associated with them.' " *Id.* (quoting S. Connor, Zoning, in Municipal Law & Practice § 13.17 (Ill. Inst. for Cont. Legal Educ. 2000)).

¶ 23    Because of the nature of a special use and the special findings and conditions typically required, it may be desirable to provide a time limit within which the use must be commenced. This allows the local authorities to maintain a certain degree of control over the special use. *See Rockford Blacktop Construction Co. v. County of Boone*, 263 Ill. App. 3d 274, 282 (1994).

¶ 24    The applicable ordinance here provides:

"If the use of the property as authorized by the special use permit, or modification or renewal, is commenced and, at a later date, is discontinued for a period of 24 consecutive months or there is evidence of a clear intent on the part of the owner to abandon the special use on the property prior to the 24-month discontinuance, then the special use permit shall lapse. If the use of the property as authorized by the special use permit, or modification or renewal, is commenced and, at a later date, discontinued for a period of 12 to 23 consecutive months, the special use permit, including a modification or renewal of such special use permit will require staff review and a "finding of fact" by the Zoning Officer before the special use can be reestablished. In this case, staff shall perform a review using the six standard "findings of fact" criteria listed in Section 63-05 of this Ordinance. If a positive review is made to all six criteria and there is evidence that all conditions on the approval have been or will be satisfied, a zoning clearance shall be issued to reestablish the special use. If a negative review is made for one or more of the six criteria, the Zoning Officer shall deny the request to reestablish the special use and the special use permit shall lapse. In this event, the applicant may appeal the Zoning Officer's decision and/or file an

application for a special use permit. Anytime within the 24 month period provided for in this Section an applicant may apply for the renewal of a special use permit from the Zoning Officer; after the 24 month period a new application must be submitted to the Zoning Board of Appeals." Rockford Zoning Code, § 63-012-C (adopted Apr. 4, 2006).

¶ 25 The parties' compliance, or lack thereof, with the above ordinance is at the crux of this appeal. The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005). The best indicator of the legislature's intent is the language in the statute, which must be accorded its plain and ordinary meaning. *Id.* at 26. Where the language in the statute is clear and unambiguous, this court will apply the statute as written without resort to extrinsic aids of statutory construction. *In re R.L.S.*, 218 Ill. 2d 428, 433 (2006). Municipal ordinances are interpreted using the same general rules of statutory interpretation. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 7 (2009).

¶ 26 The plain language of section 63-012-C of the Code sets forth the following procedure to determine if a special use permit has lapsed and how that special use can be reestablished: (1) the special use permit will lapse if the special use of the property has been discontinued for 24 consecutive months or the owner has demonstrated a clear intent to abandon the special use on the property; (2) if the City staff determines that the special use of the property has been discontinued for between 12 and 23 months, then the special use permit needs to be reestablished; (3) the owner may request to reestablish the special use permit; (4) the City staff then conducts a review using the six standard "findings of fact" criteria listed in section 63-005 of the ordinance; (5) if the City staff, or Zoning Officer, makes a positive review, then a zoning clearance shall be issued to reestablish the special use; (6) if the zoning officer makes a negative review, then the special use

permit lapses; (7) the owner may appeal the zoning officer's decision or file a new application for a special use permit.

¶ 27    Here, the first part of section 63-012-C of the Code is not at issue because the use of the property was not discontinued for 24 months nor did the plaintiff demonstrate a clear intent to abandon the special use on the property.  Indeed, all the evidence in the record indicates that the plaintiff intended to sell used cars at the property.

¶ 28    The second part of section 63-012-C of the Code is applicable because the City staff determined that the use of the property as authorized by the special use permit had been discontinued for more than 12 consecutive months.  The trial court determined that the City staff's finding was wrong because the plaintiff's getting the property ready to sell cars constituted "use of the property as authorized."  The City insists that the trial court's determination was incorrect as the special use of the property could only be maintained if the property was being used to sell cars, not just getting the property ready to sell cars.  We need not address this issue, however, as it is not relevant to our ultimate determination of the correctness of the trial court's decision.

¶ 29    Once the City determined that the special use of the property had been discontinued, the next step was for the plaintiff to request that the special use be reestablished.  The City disagrees, arguing that at this point the plaintiff should have appealed to the ZBA the zoning officer's determination that the special use of the property had been discontinued for 12 consecutive months and that the six findings of fact to reestablish the special use permit had not been met.  The City therefore argues that because the plaintiff did not timely appeal to the ZBA, he failed to exhaust his administrative remedies, and therefore his appeal should be dismissed.  See *Canel v. Topinka*, 212 Ill. 2d 311, 320 (2004) (generally a party aggrieved by an administrative action must first pursue all available administrative remedies before resorting to the courts).

¶ 30    The City's argument is inconsistent with the procedures set forth in the ordinance.  The plain language refers to the owner making a "request to reestablish the special use and the special use permit."  Although that language appears near the end of the ordinance, it is most logical to read that as the next step which occurs after the owner learns from the City that the special use needs to be "reestablished."  To hold otherwise would not only be illogical but would also require us to ignore the language that the owner is to make a "request," something we cannot do. See *Brucker v. Mercola*, 227 Ill. 2d 502, 514 (2007) (statutes must be construed so that each word, clause, and sentence is given meaning, and not rendered superfluous).

¶ 31    Moreover, contrary to the City's argument, section 63-012-C of the Code did not require the plaintiff to appeal to the ZBA before he filed his request to reestablish the special use.  Section 63-012-C also does not provide for the City staff to conduct a six standard findings of fact analysis at the same time it determines that the special use had been discontinued for more than 12 months.  Indeed, to do so would create the absurd situation where the City staff has determined that the special use permit cannot be reestablished before the plaintiff even requests that it be reestablished.

¶ 32    As the next step in the process was for the owner to request that the special use be reestablished, we believe he did that when he filed a special use permit application.  We note that, under the ordinance, filing a special use permit application is something that is to occur after the zoning officer denies the request to reestablish the special use.  However, the reason that the plaintiff filed the document that he did was based on misinformation that he received from the City staff.  The City staff told the plaintiff he needed to file an application for a new permit because (1) the permit had expired due to a lack of use for more than one year; and (2) he was the new owner of the property.  The first reason the City staff gave was wrong because the special use permit did not lapse due to non-use until 24 months had passed.  Rockford Zoning Code, § 63-012-C (eff.

Apr. 3, 2008). The second reason was equally flawed because the City ordinances provides that special use permits run with the land. Rockford Zoning Code, § 63-010 (eff. Apr. 3, 2008) ("A special use permit granted pursuant to the provisions of this Article shall run with the land and shall continue to be valid upon a change of ownership of the site or structure which is the subject of the special use permit application"). Based on the misinformation he received, we agree with the trial court that it was equitable to treat the special use permit application the plaintiff filed as his request to reestablish the special use.

¶ 33    In so ruling, we reject the City's argument that the plaintiff should be bound by the improper document he filed because "ignorance of the law is no excuse." The City points to no case, however, where that doctrine has been applied when the plaintiff's mistake of law was based on wrong information he received from the City's own employees. As we believe it would be unjust to apply that doctrine based on the circumstances of this case, we decline to do so. See *Halleck v. County of Cook*, 264 Ill. App. 3d 887, 893 (1994) (equitable estoppel will be applied against municipal bodies if it is necessary to prevent fraud and injustice).

¶ 34    Having determined that the plaintiff made a request to reestablish the special use permit, the next part of the procedure under section 63-012-C of the Code was for the City staff to conduct a review using the six standard "findings of fact" criteria listed in section 63-005 of the Code. The City staff did that and made a positive review. Based on this positive review, section 63-012-C required that "a zoning clearance shall be issued to reestablish the special use." Section 63-012-C's use of the term "shall" mandates that the special use be reestablished. See Rockford Zoning Code, § 11-002-C (eff. Apr. 3, 2008) ("The words 'must,' 'will,' 'shall,' and 'may not' are mandatory"). Accordingly, the trial court properly granted summary judgment to the plaintiff and ordered that the special use for the property be reestablished.

¶ 35    We next turn to the City's argument that the trial court erred in awarding the plaintiff any damages because such damages were barred by the Tort Immunity Act (745 ILCS 10/2-201 (West 2018)).  The purpose of the Tort Immunity Act is to protect local public entities and their employees from liability arising from the operation of government.  *Coleman v. East Joliet Fire Protection District*, 2016 IL 117952, ¶ 34. " 'The Tort Immunity Act adopted the general principle that local governmental units are liable in tort, but limited this liability with an extensive list of immunities based on specific government functions.' "  *Id.*   (quoting *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 192 (1997)).  By restricting the class of claims that may be brought against local authorities, "the legislature sought to prevent the diversion of public funds from their intended purpose to the payment of damage claims."  (Internal quotation marks omitted.)  *Prorok v. Winnebago County*, 2017 IL App (2d) 161032, ¶ 7.

¶ 36    Section 2-201 of the Act provides that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."  745 ILCS 10/2-201 (West 2018); *In re Chicago Flood Litigation*, 176 Ill. 2d at 193-94.  As such, section 2-201 immunity protects against both negligent and willful and wanton conduct.  *Nichols v. City of Chicago Heights*, 2015 IL App (1st) 122994, ¶ 27.  Section 2-209 of the Act extends immunity granted to public employees to municipalities.  745 ILCS 10/2-109 (West 2018) ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable").  Where an official's conduct requires deliberation or the exercise of judgment, his or her actions are discretionary and are subject to immunity. *Donovan v. County. of Lake*, 2011 IL App (2d) 100390, ¶ 62.

¶ 37    Here, the trial court found that the City's staff were entitled to immunity under section 2-201 of the Tort Immunity Act.  Nonetheless, the trial court awarded the plaintiff his "court costs, the $2500 business bond he paid but which went unused, and the $5868 cost of coverage for vehicles garaged on the property for sale that also went unused."  The trial court's determination, that the Tort Immunity Act applied to the plaintiff's action and yet he was still entitled to some damages, was erroneous.  See *Prorok*, 2017 IL App (2d) 161032, ¶ 7.  We therefore vacate that portion of the trial court's judgment awarding the plaintiff damages.

¶ 38    In so ruling, we reject the plaintiff's argument that the City waived its argument that the amount of damages awarded was improper.  The plaintiff points to the City's response to its motion for summary judgment where it argued that, if the trial court did find the City liable, the plaintiff's damages should be limited to his special use permit application fee, the bond premium and the court filing fees.  In making this argument, however, the plaintiff ignores that the City's primary argument was that the Tort Immunity Act barred the plaintiff from receiving any damages.  The City's suggestion that the plaintiff receive some limited damages was its alternate argument in the event the trial court rejected its primary argument.  The fact that a party raises an alternative argument in the trial court does not prevent it from maintaining the correctness of its primary argument on appeal.  See *Gaffney v. Board of Trustees of Orland Fire Protection District*, 2012 IL 110012, ¶ 36 (plaintiff's raising of an alternative argument in the trial court did not prevent the reviewing court from considering the merits of his primary argument on appeal).

¶ 39    The plaintiff further argues that the damages the trial court awarded were justified because the City's wrong actions were done willfully, maliciously, and with reckless disregard.  Based on the City's malicious actions, the plaintiff insists that this court should award him more damages than the trial court did.

¶ 40    Because the plaintiff did not file a cross-appeal, we cannot award him more relief than the trial court did.  See *People ex rel. Wray v. Brassard*, 226 Ill. App. 3d 1007, 1011 (1992) (in the absence of a cross-appeal, an appellee will not be permitted to challenge or ask the reviewing court to modify a portion of the trial court's order).  As to the damages the trial court did award, there was no basis for them even if the trial court found that the City staff acted willfully or maliciously.  The City's alleged malicious act was its determination that the property had not been used for 12 consecutive months.  That was a discretionary determination that did not affect the immunity afforded to the City staff from the legislature.  See *Nichols*, 2015 IL App (1st) 122994, ¶ 27; *Donovan*, 2011 IL App (2d) 100390, ¶ 62.

¶ 41                                        III.   CONCLUSION

¶ 42    For the foregoing reasons, we affirm the judgment of the circuit court of Winnebago County granting the plaintiff summary judgment on his complaint; we vacate the award of damages to the plaintiff.

¶ 43    Affirmed in part and vacated in part.